52 CCPA

**Application of Karl FOLKERS.**
**Patent Appeal No. 7393.**

United States Court of Customs
and Patent Appeals.
May 13, 1965.

Smith, J., dissented.

I. Louis Wolk, Rahway, N. J. (Albert W. Rinehart, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

The appealed claims of Karl Folkers' application [1] are directed to N-pantothenyl derivatives of two naturally-occurring ring amino acids, phenylalanine and histidine, and a method of preparing those derivatives by reacting the corresponding β-alanyl-amino acid with pantoyl lactone. While Folkers' disclosure shows, and he originally claimed, naturally-occurring amino acids in general, only the following four claims remain:

> 12. The process of preparing N-pantothenyl-dl-phenylalanine which comprises reacting N-(β-alanyl)-dl-phenylalanine with pantoyl lactone.

> 13. The process of preparing N-pantothenyl-histidine which comprises reacting N-(β-alanyl)-histidine with pantoyl lactone.

> 15. N-pantothenyl-dl-phenylalanine.

> 16. N-pantothenyl-histidine.

During prosecution, appellant removed a Brown et al. publication by a Rule 131 affidavit which was accepted by the Patent Office as showing a date of completion of the invention in the United States

---

1. Application serial No. 862,031, titled "N-Pantothenyl Amino Acids and Processes for Preparing Them," filed December 28, 1959, which is a continuation of application serial No. 558,615, filed January 12, 1956.

prior to April 1955, the publication date. A subsequently filed affidavit under Rule 132, apparently based on the identical factual showing as that given in the Rule 131 affidavit, carries appellant's date of completion of the invention back prior to April 1954, the date of the following sole reference relied on:

Baddiley et al. J. Chem. Soc. (London) 1954, pp. 2803–2812. It is not controverted that Baddiley discloses a process of reacting pantolactone (pantoyl lactone) with β-alanyl amino acids. While Baddiley does not show the β-alanyl histidine or β-alanyl phenylalanine of the claims, other known naturally-occurring amino acids are shown.

The issue presented by the above facts is similar to that in In re Palmquist, 319 F.2d 547, 552, 51 CCPA 839, the principal difference being that here the rejection involves only one reference. While appellant, in urging that Baddiley has been overcome as a reference, relies on Palmquist, and the solicitor seeks to distinguish that case on its facts, relying on In re Wenzel, 88 F.2d 501, 24 CCPA 1050, our decision here is governed by In re Foster, 343 F.2d 980, 52 CCPA ——, in which we overruled Palmquist.

■ Whatever right to a patent appellant may have had at the time the invention was made, it has been lost within the meaning of section 102(b) *if*, indeed, the claimed invention *became* obvious to one of ordinary skill in this art through the publication of the reference more than one year before appellant filed his application.

It was the examiner's view that to be entitled to a patent, appellant must show that the substitution of other naturally-occurring amino acids for those listed in Baddiley would not be obvious. As the board noted, appellant has not controverted the examiner's statement that the claimed invention would be obvious to one of ordinary skill in this art upon viewing Baddiley. Rather, appellant filed an affidavit under Rule 132 in an attempt to remove Baddiley, thus precipitating the issue of whether Baddiley gave

rise to a statutory bar. The board held that appellant could not remove a publication whose date was more than a year prior to his effective U. S. filing date even though the disclosure therein did not identically disclose the claimed invention. The board also agreed with the examiner that the disclosure of the reference was sufficient to show that the claimed invention had been obvious to one of ordinary skill in the art for more than a year. Appellant's brief argues the issue of a statutory bar under section 102(b), which in the exact words of the statute is "loss of right to patent."

■ The respective dates of the Baddiley publication and of the filing of the parent application being more than a year apart, the time factor of the bar under section 102(b) is satisfied. Of course, if the publication did not describe the claimed invention or make the claimed invention obvious, then appellant could not have lost his right to a patent. However, we think that Baddiley, in showing processes and products which differ from those claimed only in the use of other known naturally-occurring amino acids, rendered the invention obvious at the time of its publication. That publication, although subsequent to the time appellant made the invention, brought the invention within the range of obviousness for more than a year prior to his filing date, and appellant, by virtue of section 102(b), has lost whatever right to patent he once may have had. The decision of the board is therefore affirmed.

Affirmed.

WORLEY, C. J., did not sit or participate in this decision.

SMITH, Judge (dissenting).

I cannot agree with the result reached in this case, for the reasons set forth in my dissenting opinion in In re Foster, 343 F.2d 980, 52 CCPA ——.

Moreover, just as I cautioned in Foster, we are here confronted with a prime example of denial of procedural due

process to an applicant. The majority opinion fails to inform as to the precise ground of rejection in the present case, but proceeds as though the rejection were grounded on section 102(b). My study of the record has convinced me that no such rejection was ever made.

The examiner's answer states that all the claims were rejected "as being unpatentable over the Baddiley et al reference." This typically amorphous "unpatentable over" rejection tells us nothing, of course, with regard to any statutory reason for rejecting the claims. However, later in his answer the examiner says, "The applicant urges that a rejection under 35 U.S.C. 103 is not valid since he alleges that the subject matter of the claims was not obvious *at the time the invention was made* * *.*" This statement makes it clear to me, as I am certain it did to the applicant, that the examiner was thinking in terms of section 103.

In sustaining the examiner's rejection, the Board of Appeals stated:

> * * * Since the rejection over the Baddiley et al. article is based on 35 U.S.C. 103, appellant reasons that 35 U.S.C. 102(b) is not applicable. * * *
>
> * * * * * *
>
> * * * Appellant has improperly interpreted 35 U.S.C. 103, however, since this section is based upon the prior art specified in Section 102. Thus, even if an invention is not identically disclosed by a reference available under Section 102(b), a patent may still be refused over the same reference, under Section 103. * * *

As can be seen from the above statements, the actual rejection made by the examiner and affirmed by the board was based upon section 103.

But instead of deciding the issue of "obviousness" at the time the invention was made, under section 103, the instant majority manufactures and decides an issue of *loss of right to patent under section 102(b)*. How this can be done is an extremely puzzling question to contemplate, particularly in view of the statement in the Foster majority opinion that "Whether there has been a *loss of right to a patent* * * * is a distinct and separate issue, with which section 103 per se *has nothing whatever to do*." (Latter emphasis added.)

Small wonder then that, as the majority opinion so candidly puts it "appellant has not controverted the examiner's statement that the claimed invention would be obvious to one of ordinary skill in this art upon viewing Baddiley." Appellant properly assumed, in view of the express language of section 103, that the obviousness of his claimed invention would be tested as of "the time the invention was made." And since Baddiley was not even *in existence* at that time, it could hardly be said that his invention was obvious thereover at that time. Even assuming that appellant accepted as correct the contention which has now been given the force of law by this court in Foster, he certainly was under no obligation to raise arguments and produce evidence directed to issues under section 102(b), *since,* I repeat, *there was no rejection on that basis.* Insofar as appellant was concerned, his Rule 132 affidavit had removed Baddiley as a reference *for purposes of section 103,* and since section 102(b) was not involved in any rejection, he had satisfied the statutory conditions for patentability.

Now appellant learns that what seems to have been a section 103 rejection is here sufficient to raise the issue of loss of right to patent under section 102(b). If I may be permitted an *ad hominem,* this is truly learning the hard way. For this is one case in which it is painfully clear that the appealed rejection did not provide the applicant "with such information * * * as may be useful in judging of the propriety of continuing the prosecution of his application," to which he is entitled under 35 U.S.C. § 132. In addition, the present majority seems to have little regard for the jurisdictional limits of this court, in that it now decides an issue that was never pre-

sented below. I find nothing in sections 141 through 146 of Title 35 which could, even by the most imaginative lawyer, be interpreted to permit this court to decide an appeal on the basis of section 102(b) when the only rejection was for obviousness under section 103.

To me it is unconscionable that an applicant can now receive a rejection from the Patent Office on one statutory ground, and then, on appeal from that rejection, receive a wholly new rejection from this court which is based on an entirely different statutory ground. I would reverse.