**Application of Clifford H. OWNBY.**
**Patent Appeal No. 8850.**

United States Court of Customs
and Patent Appeals.
Jan. 26, 1973.

B. R. Pravel, Houston, Tex., Clifford H. Ownby, pro se, Pravel, Wilson & Matthews, Houston, Tex., attorneys or record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–5 and 8–10 of appellant's application.[1] Claims 6 and 7 have been allowed. We affirm.

The invention relates to a vehicle electrical system having at least two batteries charged by a common generator. One of the batteries is used to start the vehicle engine and is usually referred to in the claims and specification as the "main battery." The other battery (or batteries) is used to power auxiliary systems and is usually referred to as the "auxiliary battery."

---

1. Serial No. 784,530 filed December 2, 1968 as a continuation of application serial No. 532,299 filed March 7, 1966.

In one embodiment of the invention, a rectifier [2] is placed between the main battery and the generator so as to effectively isolate the main battery from the auxiliary battery while allowing the generator to charge both. Claim 9 is representative:

9. In an electrical system for a motor vehicle having a generator, a main battery and an auxiliary battery, wherein the main battery is connected to a starter motor for supplying electrical power for operating same, and wherein the main battery and the auxiliary battery are both connected to the vehicle generator, the improvement residing in:

means including a solid state rectifier connected between said generator and said main battery for passing current to said main battery from said generator while blocking current flow in the opposite direction to thereby prevent the discharge of said main battery to electrical loads connected to said auxiliary battery.

The advantage of this arrangement is said to lie in the fact that the auxiliary battery can be used to power electrical accessories without discharging the main battery so that the latter's full output can be used for starting the vehicle.

In a second embodiment, one or more additional rectifiers are placed between the generator and all auxiliary batteries in order to isolate them from the main battery. Claim 1 is representative:

1. An automatic battery control system for vehicles and the like, comprising:

(a) a first electrical circuit having a main battery for motor starting therein;

(b) a second electrical circuit having an auxiliary battery therein;

(c) a generator for charging both batteries;

(d) a first rectifier connected in said first electrical circuit for permitting flow of electrical current in only the one direction from said generator to said main battery and for blocking current flow in the opposite direction; and

(e) a second rectifier connected in said second electrical circuit for permitting flow of electrical current in only the one direction from said generator to said auxiliary battery and for blocking current flow in the opposite direction.

By so isolating both the main and auxiliary batteries, either can be discharged to power a specific electrical system without discharging the other.

Other claims call for additional limitations such as means for regulating the voltage output of the generator, a common terminal for connecting the generator to the rectifiers, etc.

Although the examiner made rejections under 35 USC 102 and 103, the board phrased its decision sustaining the examiner as follows:

We have carefully reviewed the record herein, and as a result thereof, we find no reversible error in the Examiner's holding that the subject matter of the claims on appeal is made obvious to one ordinarily skilled in the art by the prior art.

The references relied upon by the examiner and the board are:

| Ganiere et al. | | |
|---|---|---|
| (Ganiere) | 3,021,469 | February 13, 1962 |
| Gorman | 3,090,871 | May 21, 1963 |
| Warren | 3,129,372 | April 14, 1964 |

The Gorman reference describes a vehicle electrical system wherein a main and auxiliary battery are charged by means of a single generator. However, no rectifiers are provided for isolating either battery from the other. Ganiere describes a battery charging system of the type a garage might use to recharge

---

2. The term "rectifier" is defined by appellant's specification as a device that permits current to flow in one direction while blocking flow in the reverse direction and includes diode rectifiers, transistors, solid state electronic devices, and other electrical devices adapted to permit the flow of electrical current in only one direction.

exhausted batteries. It is designed to accommodate two groups of batteries each group being isolated from the other by a rectifier. Warren, the only prior art discussed by the board, discloses a vehicle electrical system having a main battery and two auxiliary batteries charged from a single generator. Two rectifiers isolate the auxiliary batteries from each other. However, current can flow from the main battery to the auxiliary batteries. For ease of reference, appellant has provided in his reply brief simplified diagrams of the electrical circuits of claim 9 and the references relied upon, which are set out below.

GORMAN

GANIERE

WARREN

Claim 9

ⓖ = Generator

▽ = Rectifier

A simplified circuit diagram for claim 1 would differ from one for claim 9 only in that a second rectifier would be placed in the leg of the circuit containing the auxiliary battery in the same relative position as the rectifier isolating the main battery.

Appellant has objected to the board's decision on two basic grounds: (1) the Warren and Gorman patents were improperly applied as references against the claims, and (2) it was reversible error to conclude that the invention would be obvious to one of ordinary skill in the art in view of the references relied upon. We have carefully considered the arguments put forth by appellant but, nevertheless, find ourselves in agreement with the board for reasons set forth more fully below.

Appellant attempted to avoid the application of Warren and Gorman as references against the claims by filing an affidavit alleging a date of invention earlier than the filing date of those references (August 7, 1961 and May 2, 1962, respectively). The examiner rejected this attempt for the reason that the issue date of those patents was more than one year before the filing date of the application which is the parent to the one involved here. It was his view that 35 U.S.C. § 102(b)[3] barred any attempt to avoid these references. That section of the statute contains the "statutory time bar" provision, so named because it bars issuance of a patent if the same invention as that claimed in an application becomes available to the public in any of the ways set forth in § 102(b) more than one year before the application was filed. In such a case, the actual date when the claimed invention was made is irrelevant.

Appellant argues that the examiner's rejection under 35 U.S.C. § 102 based upon Warren was in error and clearly Gorman does not disclose the same invention as that claimed. It is appellant's view that these references can only be applied under 35 U.S.C. § 103, and he argues that the statutory time bar found in § 102(b) cannot be applied when a rejection is made under § 103. In other words, it is his view that it is improper to read into § 103 the time bar found in § 102(b). If this were true, his affidavit[4] would be sufficient to remove these patents as references. The board sustained the examiner on the authority of In re Foster, 343 F.2d 980, 52 CCPA 1808 (1965), cert. denied, 383 U. S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307, rehearing denied, 384 U.S. 934, 86 S.Ct. 1441, 16 L.Ed.2d 535 (1966), in which this court considered the contention advanced by appellant. The court explained *Foster* by saying in In re Folkers, 344 F.2d 967, 968, 52 CCPA 1303, 1304 (1965):

> Whatever right to a patent appellant may have had at the time the invention was made, it has been lost within the meaning of section 102(b) *if*, indeed, the claimed invention *became* obvious to one of ordinary skill in this art through the publication of the reference more than one year before appellant filed his application.

█ There can no longer be any doubt that the time frame for avoiding references that evidence obviousness is that imposed by section 102(b). See also In re Bergstrom, 427 F.2d 1394, 57 CCPA 1240 (1970). We find that the application of *Foster* in the instant case was proper and that it was not error for the examiner and board to apply the

---

3. § 102. Conditions for patentability; novelty and loss of right to patent. A person shall be entitled to a patent unless—

　　\*　　　\*　　　\*　　　\*　　　\*

　(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States \* \* \*.

4. Such an affidavit is allowed under the provisions of Rule 131 of the Patent Office Rules of Practice.

Warren and Gorman patents as references against the claims in issue.

In affirming the rejection of the examiner, the board was apparently of the opinion that Warren alone was sufficient to render the claimed invention obvious as it discussed no other. However, appellant has argued that none of the references teach the use of a rectifier in the "main battery" circuit. The board points out that Warren does show the isolation of two auxiliary batteries from each other by the appropriate use of rectifiers. Furthermore, it was of the opinion that referring to one of the batteries as a "main" battery, because it is used to start the vehicle engine, was of no structural significance. We agree at least insofar as it relates to the question of obviousness. We note that Warren discloses that one of the "auxiliary" batteries "may be connected to the starter motor * * * to assist [the] main battery in starting the engine." Warren clearly teaches that rectifiers can be used to inhibit parasitic drain upon one battery by a load placed upon another when the batteries are connected in a parallel arrangement such as that shown by the circuit diagram for claim 9.

Appellant has not shown why it would be more than a matter of choice to protect the main battery from being discharged by a load on an auxiliary battery particularly in view of Warren's showing of auxiliary batteries being so protected with respect to the load on the main battery and from the loads on each other. He has argued that the claimed invention has long eluded those skilled in the art. However, his only evidence of this is that an arrangement identical to his has not been discovered in the Patent Office files. More than this is needed to show unobviousness and appellant has not provided any objective evidence for that purpose such as evidence of long-felt need by others, commercial success, etc. Accordingly, the decision of the board is affirmed.

Affirmed.